## HARBOR PLYWOOD CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10436.

Circuit Court of Appeals, Ninth Circuit.
June 27, 1944.

DENMAN, Circuit Judge, dissenting in part.

McMicken, Ruppl & Schweppe, Alfred J. Schweppe, and Maurice R. McMicken, all of Seattle, Wash., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Samuel H. Levy, and Maryhelen Wigle, Sp. Assts. to Atty. Gen., for respondent.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

WILBUR, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals in three consolidated cases, sustaining determinations of income tax deficiencies against petitioner for the years 1933, 1934 and 1935. The question in each case was as to the proper basis on which to compute claims for depreciation and from loss resulting from the sale of certain assets.

Petitioner is a Delaware corporation with its principal place of business in the state of Washington. Between November 20 and December 18, 1929, it acquired either all the stock or all the assets of seven other companies: John A. Gauger & Co., Durable Door Co., Knox & Toombs, Inc., American Door & Mfg. Co., George L. Waetjen & Co., Chicago Veneer Co., and R. C. Clark Veneer Co. The first three were paid solely in preferred stock of petitioner; American Door & Mfg. Co. was paid solely in cash and the remaining three received

both cash and preferred stock. Most of the cash required was secured by issuance of petitioner's preferred and common stock to A. G. Becker & Co., a corporation, which was acting as agent for its subsidiary Metropolitan Industries. The Board of Tax Appeals found that all the foregoing constituted a single plan, and the correctness of that finding is not questioned.

On its income tax returns for 1933, 1934 and 1935 petitioner claimed deductions for depreciation or loss of assets acquired in the foregoing transaction using as its basis the cost of such assets to it, as set up in its books. The Commissioner disallowed some of those deductions, asserting that petitioner should use the transferor's basis for assets acquired from Gauger, Knox & Toombs, and Durable Door, and that although petitioner's cost was the proper basis for assets acquired from Wactjen, petitioner had not correctly apportioned its cost as between depreciable and nondepreciable assets received from that company. Petitioner petitioned the Board of Tax Appeals for a redetermination of the claimed deficiencies for the three years in question; the petitions were there consolidated and a decision rendered in favor of the Commissioner, which petitioner now brings before us for review.

The tax years in question are governed by the Revenue Acts of 1932 or 1934. The provisions of those acts for determination of the basis for property were, so far as here relevant, identical, as follows:

"Sec. 113. Adjusted Basis for Determining Gain or Loss

"(a) Basis (Unadjusted) of Property. The basis of property shall be the cost of such property; except that—* * *

"(7) Transfers to corporation where control of property remains in same persons. If the property was acquired after December 31, 1917, by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 50 per centum or more remained in the same persons or any of them, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made * * *

"(8) Property acquired by issuance of stock or as paid-in surplus. If the property was acquired after December 31, 1920, by a corporation—

"(A) by the issuance of its stock or securities in connection with a transaction described in section 112(b) (5) (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or money, in addition to such stock or securities), * * * then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made."

"Sec. 112. Recognition of Gain or Loss

"(a) General Rule. Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

"(b) Exchanges Solely in Kind—* * *

"(5) Transfer to corporation controlled by transferor. No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange. * * * * * "

Sec. 114(a) follows:

"(a) Basis for Depreciation. The basis upon which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the adjusted basis provided in section 113(b) for the purpose of determining the gain or loss upon the sale or other disposition of such property * * * *". 26 U.S.C.A. Int.Rev. Acts, pages 511, 514, 519, and pages 692, 696, 701.

Petitioner relied on the general provision of § 113(a), supra, that basis shall be cost. The Commissioner ruled that the exception contained in § 113(a) (7) was applicable to the transfers from Gauger, Knox & Toombs and Durable Door. This resulted in reducing the allowable deductions for loss or depreciation as to those properties. The Board of Tax Appeals sustained the Commissioner's ruling that the transferor's

basis was the proper basis as to petitioner, but did so on the ground that the transfers came within the terms of § 113(a) (8), and did not consider it necessary to determine the applicability of § 113(a) (7).

The Tax Court stated the question before it for decision as follows:

"The question is whether there is a substantial disproportion between the respective interests of the transferors in the assets transferred and their interests in all the shares received."

It was the duty of the Board of Tax Appeals to find specifically the facts of the question before it, that is, whether there was or was not such a disproportion (unless it should find facts bringing the transaction within § 113(a) (7), a question which it did not decide). Without a finding as to the facts there is no foundation for a conclusion of law as to the proper depreciation basis. Although the Board of Tax Appeals made extensive findings as to evidentiary or circumstantial matters, it made no finding on this ultimate question, saying only:

"It is sufficient, however, to say that the evidence does not support a finding that the shares received by the four corporations, Gauger, Knox & Toombs, Durable Door and Metropolitan, were not substantially in proportion to the assets and money which they exchanged for them."

In its attempt to show that the shares received were not substantially proportionate to the assets given, petitioner introduced in evidence a tabulation which it was stipulated showed the various valuations as set up on petitioner's books. These values were corroborated by the testimony of two witnesses. The witnesses were not impeached and no contrary evidence was offered. Nevertheless, the Board of Tax Appeals declined to believe their statements, saying in its opinion:

"All that the evidence contains, however, is the opinions of the secretary-treasurer [Mr. Wise] and of the president [Mr. Daniels] to the effect that the gross figures placed on the petitioner's books as the aggregate value of all the assets of each transferor corporation represented no less than the value of such assets. Both these opinions were categorical, and the evidence contains no indication that the witnesses had made the complete investigation and analysis which would give such an opinion authority."

We do not regard the foregoing as a correct statement of the evidence. Mr. Wise, petitioner's secretary-treasurer, had been employed by A. G. Becker & Co., at the time of the transaction here in question, and on behalf of that company investigated the assets of all the transferors to determine whether the reorganization would offer a sound investment for the Becker Company. He testified that he had engaged in appraisal of buildings and warehouses since 1916. He described the investigations that he made, as follows:

"In each one of these companies I took the inventories. I went over all the assets, the machinery, to determine, in my own judgment, for the A. G. Becker Company, whether or not it was properly described and properly valued, within the scope of my experience. I went over all the buildings, the physical part of it, checked—even did things that the appraiser didn't do, and checked many other things to see whether or not they would outlive what is the ordinary life of that particular security or at least live as long as the ordinary life of the security; that was my function."

"I was given the copies of the contracts which set forth the condition under which they were supposed to be bought; I was given the evidence that so far as—submitted to the company in the way of appraisals for the purpose of verifying the value of the assets that they were to purchase, and also determine whether or not they would be desirable acquisitions.

* * *

"Well, I studied them [the contracts] over and made notes that I would have to look for when I was looking at the assets, and my principal job is,—well, as to the assets and to the work with the results—checked over the audits that were made by Price Waterhouse & Company, which was supposed to substantiate the accuracy of the books, and to review the work of the appraisers to see whether or not the values were there. I also went into other economic assets of the company to determine whether or not the market was there for the business, or whether the type of production would fit in with the other companies. I studied the sources of supply, raw materials, labor conditions and the manufacturing procedure, and all those things of the company to satisfy a person whether or not he is buying into a good business."

In the case of John A. Gauger & Co., Wise testified that the fair value of the land and depreciable assets was "at least $231,000, if not in excess of it." In the case of George L. Waetjen & Co. he testified that the fair value of the land and depreciable assets was more than the $104,109.11 shown on the books. As to each of the five other companies he testified without qualification to the precise fair value.

Mr. Daniels, petitioner's president, testified that he was familiar with the various properties, and his testimony of the values for Gauger, Knox & Toombs and Durable Door agreed with that of Mr. Wise.

The Board of Tax Appeals did not discredit petitioner's evidence generally, but did so upon the specific ground that it failed to show precise values or the making of any examination on which the valuations stated were based. As we have pointed out, both matters said to be lacking were in fact present in the evidence.

The case must be remanded to the Tax Court for findings of the ultimate facts. Helvering v. Rankin, 295 U.S. 123, 131, 132, 55 S.Ct. 732, 79 L.Ed. 1343;[1] Belridge Oil Co. v. Helvering, 9 Cir., 69 F.2d 432; Tricou v. Helvering, 9 Cir., 68 F.2d 280. We leave to that tribunal the appraisal of the evidence, viewed in the light of the positive testimony of petitioner's witnesses as to the fair value of the properties involved in the transfer.

As to the assets acquired from Waetjen, it is agreed that the proper basis is their cost to petitioner. The total cost of assets so acquired is agreed to have been $218,442.50; the dispute is as to what portion of that cost is attributable to depreciable assets.

The applicable Treasury Regulation (Article 204, Regulations 74; Article 204, Regulations 77; Section 19.23 (1) (4), Regulations 103) provides that when the total value of assets acquired exceeds the total cost, cost shall be allocated between depreciable and nondepreciable assets in proportion to their respective values. Petitioner set up values for the assets acquired from Waetjen totaling $257,397.19, which exceeds cost by $38,954.69. In conformity with the regulation, petitioner deducted the proportionate part of this excess from the stated value of the depreciables to determine the cost basis thereof. In assessing a deficiency the Commissioner accepted and used the various values assigned by petitioner to the various assets, but deducted whole excess of value over cost from the value of the depreciables to determine the cost thereof, leaving the costs of the other assets exactly equal to their respective values. This was manifestly not in accordance with the regulation.

The Board of Tax Appeals, in sustaining the Commissioner, merely stated that it could "find nothing in the evidence to support a criticism of" his method. The criticism rests not on the evidence but on the law. The Commissioner argues that the values of the depreciables were not shown by the evidence, but that is beside the point. The values set up by petitioner were accepted by the Commissioner in his deficiency notice, and were not in issue before the Board. Petitioner was under no obligation to support them by evidence and the Board made no finding concerning them. The only dispute was as to the method of computing cost from the agreed figures, and as to that the Commissioner was wrong. The Commissioner argues that his acceptance of petitioner's valuations of depreciables was for the limited purpose of allocating cost as among the various depreciables, and did not extend to acceptance of them for the purpose of allocating cost as between depreciables and nondepreciables. Nothing in his deficiency notice suggests that and it does not appear that that contention was presented to the Board of Tax Appeals. This court will not consider in support of a deficiency assessment, reasons not advanced by the Commissioner in his deficiency notice or before the Board of Tax Appeals, especially when the taxpayer has been deprived thereby of the opportunity to present evidence material thereto. Helvering v. Tex-Penn

---

[1] "If the Board has failed to make an essential finding and the record on review is insufficient to provide the basis for a final determination, the proper procedure is to remand the case for further proceedings before the Board. Compare Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623; Murphy Oil Co. v. Burnet, 287 U.S. 299, 308, 53 S.Ct. 161, 77 L.Ed. 318. And the same procedure is appropriate even when the findings omitted by the Board might be supplied from examination of the record." Helvering v. Rankin, 295 U.S. 123, 131, 132, 55 S.Ct. 732, 736, 79 L.Ed. 1343.

784

Co., 300 U.S. 481, 498, 57 S.Ct. 569, 81 L. Ed. 755.

Reversed and remanded for further proceedings not inconsistent with this opinion.

DENMAN, Circuit Judge (dissenting in part and concurring in part).

I dissent so far as this case concerns the taxpayer's claimed deductions for depreciation on the assets other than those acquired from George L. Waetjen & Co. Since these deductions were disallowed by the Commissioner the burden is upon the taxpayer "to point to an applicable statute and show that he comes within its terms." New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348.

Taxpayer's petition states its burden with respect to the matters first decided in the majority opinion. Its petition to the Tax Court shows it to be that the Commissioner erred "In holding, contrary to the law and the evidence, that the evidence does not support a finding that the shares received by the four corporations, John A. Gauger & Company, Knox & Toombs, Inc., Durable Door Company and Metropolitan Industries, were not substantially in proportion to the assets and money which they exchanged for them."

On this the Tax Court found that "It is sufficient, however, to say that the evidence does not support a finding that the shares received by the four corporations Gauger, Knox & Toombs, Durable Door and Metropolitan, were not substantially in proportion to the assets and money which they exchanged for them."

To say, in this modern America, that this is not a finding sufficient to dispose of the issue as to whether taxpayer had sustained its burden seems to go back long before the Congressional legislation, 28 U.S. C.A. § 391, providing for appeals from court decisions that "On the hearing of any appeal, certiorari, writ of error, or motion for a new trial, in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties."

The principle established in § 391 is the more clearly applicable to the proceedings before such a tribunal as the Tax Court which has none of the technicalities of common law. This is a case coming from the Tax Court where the record on review is sufficient "to provide a basis for a final determination." The majority opinion itself has taken from the record the basis on which our final determination should be made. Cf. Helvering v. Rankin, 295 U.S. 123, 131, 132, 55 S.Ct. 732, 79 L.Ed. 1343. I believe the evidence sustains the decision of the Tax Court.

With regard to the latter portion of the opinion, dealing with the assets acquired from Waetjen & Co., I concur.