**George K. FORD and Helen L. Ford, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 13569.

United States Court of Appeals Ninth Circuit.

Dec. 10, 1954.

Healy, Circuit Judge, dissented.

Eli Freed, Emmett Gebauer, Freed, Gebauer & Freed, San Francisco, Cal., for appellants.

H. Brian Holland, Atty. Gen., Ellis N. Slack, Helen Goodner, George F. Lynch, Melva M. Graney, Sp. Assts. to Atty. Gen., Charles W. Davis, Chief Counsel, Bureau of Internal Revenue, Washington, D. C., for appellee.

Before HEALY, BONE and POPE, Circuit Judges.

BONE, Circuit Judge.

This case was appealed to this Court by the taxpayers, after a determination in the Tax Court in favor of the Commissioner.[1] Because the deficiencies asserted by the Commissioner against Helen L. Ford and George K. Ford were identical, and the issue presented in each petition was identical, the cases were consolidated before the Tax Court.

Only the computations for the years 1943 and 1944 (prepared by the Commissioner) were in issue before the Tax Court and these only because they were challenged by the taxpayers. In its reported opinion, the Tax Court stated that "because of the forgiveness feature of the Current Tax Payment Act, the years 1942 and 1943 were considered together and the tax liability is shown for 1943 only."

The case was submitted to the Tax Court upon the following stipulation of facts,[2] which was subsequently adopted by the Tax Court as its findings of fact:

### Stipulation of Facts

"It is Mutually Stipulated and Agreed, by and between the parties hereto, through their respective attorneys of record, that the following statements are true; that this proceeding may stand submitted upon the filing of this stipulation, and that briefs shall be filed within the time to be fixed by the Court as provided in Rule 30(a) of the Court's Rules of Practice [26 U.S.C.A. following § 1111]:

"1. Petitioners George K. Ford and Helen L. Ford are husband and wife, and now are and at all times material to this controversy have been residents of the State of California. All income tax returns involved in this proceeding were filed with the Collector of Internal Revenue for the First District of California.

"2. Petitioner George K. Ford is an attorney at law, duly licensed to practice in all courts of the State of California. All income involved in this proceeding was community income of petitioner George K. Ford and his wife, petitioner Helen L. Ford. Petitioners were entitled to divide such income equally between them for income tax purposes, each petitioner reporting one-half thereof on a separate return, or to aggregate such income and report the whole thereof on a joint return.

"3. Petitioners are on the cash basis, and their accounting period is the calendar year. For the calendar years 1942, 1943 and 1944 petitioners filed joint returns reporting the aggregate income actually realized by them in each of such years, as follows:

```
"1942 (Loss resulting from business
         deductions and loss carry-
         over) ........................... Loss ($4,739.04)
  1943 (Loss resulting from business
         deductions and loss carry-
         over) ........................... Loss ($ 245.83)
  1944 ...............................Income  $2,595.39
```

"At the time said returns were filed there was no financial or tax advantage to filing separate returns for such years.

---

1. The opinion of the Tax Court is reported in 18 T.C. 387.

2. All of the facts were stipulated and these stipulated facts were adopted by the court as its own findings of fact. Since these adoptive findings do not appear in the Tax Court's reported opinion, we set them out in extenso herein.

Said returns were prepared for petitioners by Dale B. Wolfe, a certified public accountant.

"4. During the period covered by the aforesaid returns, petitioner George K. Ford had been rendering personal services as an attorney at law in connection with several legal matters. Said services extended over a period of time in excess of thirty-six (36) months, and in each such matter more than eighty per cent (80%) of the total compensation therefor was received in one year, the taxable year 1945, and petitioners were and are entitled to the benefits of the provisions of Internal Revenue Code, 26 U.S.C.A., Section 107 with respect thereto. (Hereafter this income is referred to as 'Section 107 income.') Said Section 107 income received in 1945 was as follows:

| | Commenced | Completed | | Duration |
|---|---|---|---|---|
| Pescadero Fire Case | 4-30-37 | 8-21-45 | $ 2,378.56 | 100 months |
| O'Dea Estate | 5- 1-39 | 12- 1-45 | 15,296.28 | 79 months |
| Herrscher vs. Howard | 10-10-42 | 12-14-45 | 22,324.92 | 38 months |
| | | | $39,999.76 | |

"In addition, petitioners received other income in 1945 in such amount that their adjusted gross for 1945 amounted to $53,563.82, which sum includes the aforesaid $39,999.76 Section 107 income.

"5. For 1945 petitioners filed separate income tax returns, each taking into account one-half of their aggregate income, as then computed, as follows:

| | Adjusted Gross Income | Section 107 Income |
|---|---|---|
| Petitioner George K. Ford | $25,398.58 | $18,666.54 |
| Petitioner Helen L. Ford | 25,398.57 | 18,666.55 |

"By reason of adjustments which are not in issue in this proceeding, said returns have been adjusted to take into account the income set forth in Paragraph 4, above, as follows:

| | Adjusted Gross Income | Section 107 Income |
|---|---|---|
| Petitioner George K. Ford | $26,781.91 | $19,998.88 |
| Petitioner Helen L. Ford | 26,781.91 | 19,998.88 |

"Petitioners claimed the benefits of Internal Revenue Code Section 107 with respect to the aforesaid Section 107 Income, and in so doing, and in making the requisite hypothetical allocations of such Section 107 income over the periods during which the services for which it was paid were respectively performed, and in order to determine what tax would have been attributable thereto had such Section 107 income been received pro rata over the period during which it was earned, petitioners computed the additional tax attributable to the taxable years 1942, 1943, and 1944 on the basis of what their tax would have been had they filed separate returns for such years, each reporting one-half of the Section 107 income attributable to each of said years. If the Section 107 income had in fact been received pro rata over the period during which it was earned, it would have been to petitioners' financial advantage to have filed separate returns for the taxable years 1942, 1943, and 1944.

"6. *The deficiency asserted for the year 1945 which is involved in this proceeding is based on the asserted ground that: 'Joint returns were filed by you and your spouse for the taxable years 1942, 1943, and 1944. Such filing constituted a binding election on your part as to the matter of computing your income taxes for those years. Accordingly, the computation for the taxable year 1945 under Section 107(a), Internal Revenue Code, of the tax attributable to compensation for personal services for the taxable years 1942, 1943 and 1944, is made on the basis of joint returns.'* (Italics ours.)

"7. The sole issue involved in these proceedings is whether in reporting the aforesaid Section 107 income in 1945, petitioners were bound to compute their taxes on the basis of joint returns for the calendar years 1942, 1943, and 1944, or whether petitioners were entitled, in computing their 1945 taxes under the relief

provisions of Internal Revenue Code Section 107, to adopt the more favorable method of making the necessary prior year computations on the basis of separate returns for said prior years."

Out of the mass of complicated tax computations for past years both parties evolved and presented just one issue to the Tax Court (see paragraph 7 of Stipulation) for adjudication but the Tax Court did not decide this issue. It apparently believed that there was no evidence before it on an uncontested matter of "individual allowable deductions for 1943 and 1944," and as a result it would not decide the issue (the so-called "binding election" issue pointed up in paragraphs 6 and 7 of the Stipulation) which had been presented by the parties. It found for the Commissioner. The court said, " * * * it is apparent that the petitioners have erred,[3] under their theory, in not introducing the facts here about their separate deductions in years prior to 1945, * * *."

The court explained its position, "For example, we do not know what the separate individual deductions of George Ford were for 1943 and 1944, which [deductions] must be known in order to get his individual net income. We may assume that his gross income for 1944 was the same as his wife's, because it has been stipulated that all of their income for 1944 was community income. Under section 161a of the Civil Code of California the earnings of spouses after 1927 are community income; and the rule is, for Federal income tax purposes, that one-half of the community income is the income of each spouse. (citations) *But, each spouse, if he elects to file a separate return, may take only the de-*ductions which, under the Code, may properly be taken from his individual income. We cannot assume in this proceeding that Helen Ford had the identically same allowable deductions in 1943 and 1944 as George Ford.* The petitioners did not get the alleged tax attributable to 1944, $1,133.86, by applying their own theory. Instead, they have followed a hybrid method under which they took the net income for 1944, resulting from off-setting combined deductions against combined income, computed on the basis of a joint return, which they then arbitrarily divided in half in order to apply the tax rates which would be applied on the basis of a single return.

"Since the petitioners have not in fact applied the theory which they contend is proper, under section 107(a), we cannot approve their respective computations of the taxes 'attributable' to the earlier years. *It follows that the respondent's [Government's] computations and the resultant determinations of deficiencies must be sustained.*" (Italics ours.)

The Tax Court continued, " * * * the petitioners have entirely overlooked another rule. See Helvering v. Janney, 311 U.S. 189 [61 S.Ct. 241, 85 L.Ed. 118], and Taft v. Helvering, 311 U.S. 195 [61 S.Ct. 244, 85 L.Ed. 122]. It was held in the Janney and Taft cases that *the deductions of the spouses who file a single joint return may be treated in ways which have a different result taxwise than when separate returns are filed, and from the conclusions reached in those cases, it is apparent that the petitioners have erred,* under their theory, *in not introducing the facts here about their separate deductions in years prior to 1945,* if it is proper for each to reconstruct in-

**3.** According to appellant's Motion for Rehearing, Reconsideration, and Revision of Opinion and Decision, "Both petitioners' brief and the Government's brief set forth methods of computation and tax liability resulting, without dispute, pursuant to request of court, as above discussed. As a matter of fact the tax liabilities resulting from petitioner's theory were, through the courtesy of Government counsel, computed by the audit section of the Technical Staff. The computations, in fact, allowed no personal deductions with respect to 1943, in which no personal deductions had been claimed, and allowed standard deductions with regard to 1944 in accordance with the position taken by the Government in the 90-day letter."

come and tax for earlier years on an individual basis." (Italics ours.)

We note that this "separate deductions" issue was not raised or presented in any manner by the parties in their stipulation of facts, the 90-day letter, petition, answer, reply, opening statements, oral argument, nor in written briefs before the Tax Court. This issue first appears in the court's reported Opinion in this case.

The Tax Court decided that there was a deficiency for the year 1945.

We believe the reason for the foregoing decision of the lower court, and the reason why it did not decide the sole issue (as agreed on in paragraph 7 of the Stipulation) is reflected in a statement in its opinion that "no evidence is presented to show individual allowable deductions for 1943 and 1944."

We cannot sustain the decision. The problem that the Tax Court wrestled with might have been present if the facts had been different. But, before the Tax Court was Exhibit "B" attached to the Commissioner's 90-day letter and entitled "Tax Applicable to Section 107 Compensation for 1944 and Prior Years," which exhibit had been prepared by appellee Commissioner, and it (Exhibit "B") clearly indicates that *there were no deductions for the year 1943* [a loss being claimed] *and that the Standard Deduction of $500 was claimed in the year 1944.* Petitioners also adopted and re-ferred the Tax Court to this Exhibit "B" attached to the 90-day letter. This "adoption" appears in Exhibit "A" to Petitioners' Brief which was entitled "Method of Computation, I.R.C. Section 107" which showing or analysis was requested by the court to clarify the issue.[4]

Of course the problem the court discusses could not be present in 1943 when there were no deductions, and the problem was not present in 1944 when the $500 standard deduction was taken.

Section 107(a) allows an individual or partnership an alternative method of computing tax on income received in one year if the payment amounts to 80 per cent or more of the total compensation for personal services performed over a prior period of 36 months or more.

The taxpayer may elect to regard the payment as normal income received during the year or he may ratably spread the income over the period in which it was earned, and need not pay more tax in the year of receipt than he would have paid if he had received the amount ratably over the period when the services were performed, and paid such additional taxes in the prior years.

Under the applicable Regulations [5] the method of computing the tax for 1945 which resulted from the "bunched income" is, in general, to pro rate the compensation over the months included in the period when services were performed. (It will be noted that there is no

---

4. A pertinent part of Exhibit "A" reads as follows: "In the interest of simplicity the schedules of tax computation for prior years are summarized so as to reflect only computations and changes bearing on the controversy between the parties. Thus the details of tax computation, e.g., the amount of normal tax, surtax, victory tax, tax credits, etc., are not shown as these figures follow mathematically from a given net income figure and present no special problem under either the commissioner's or petitioners' theories. *More detailed computations are set forth in Exhibit 'B' to the 90 day letters.* (Italics ours.)

"It will be noted that the only point at which there is any disagreement is in Step 7 (computations for prior years), and then only for the years 1943 and 1944. In such years there is no disagreement as to the amount or method of determining the hypothetical income allocable to such years. Neither is there any disagreement as to the method of computation on the joint or separate return basis; the only issue is as to whether a determined amount of income agreed to be community income can be divided equally among the petitioners in making § 107 computations for such years."

5. Treasury Regulation III, Section 29.-107-1 sets forth the method of computing the tax.

change made in the tax actually paid in the earlier years.) Section 107 permits a taxpayer to take the figure of net income received in each prior year involved and add thereto the pro rated share of the "bunched income." After the net income for each prior year involved is increased by this pro rated share of "bunched income," a new (and hypothetical) tax figure is computed. Then the actual amount of tax paid in each of the prior years is substracted from the computed amount of tax that would have been paid *if* the pro rated income had actually been *received* in each prior year involved. This computation is made for all prior years in which part of the monthly pro rated income falls. Then the figures which result from substracting the tax actually paid in the prior years from the amount of tax which would have been paid, if the amount of pro rated income had been received in the prior years, are added and the taxpayer need not pay more tax on the "bunched income" in the year of receipt (herein 1945) than the sum of the above results reached from subtracting the actual tax paid in the prior years from the hypothetical tax.

The "sole issue" presented to the Tax Court [6] but not decided by it was,

"* * * whether in reporting the aforesaid Section 107 income in 1945, petitioners were bound to compute their [hypothetical] taxes on the basis of joint returns for the calendar years 1942, 1943, and 1944, or whether petitioners were entitled, in computing their 1945 taxes under the relief provisions of Internal Revenue Code Section 107, to adopt the more favorable method of making the necessary [hypothetical] prior year computations on the basis of separate returns for said prior years."

In the above excerpt we inserted in brackets the word "hypothetical" in an effort to make clear that *the taxpayers did not recompute their actual taxes paid for 1943 and 1944 on the basis of sepa-* *rate returns.* The amount of income received and taxes they paid for the taxable years 1943 and 1944, thus remains fixed. The only problem is in computing the 1945 tax. The taxpayers *computed the hypothetical income tax for 1943 and 1944* i. e., the income tax which would have been paid *if* the pro rated share of compensation had been received in the prior years instead of 1945, *on the basis of separate returns*, although their actual tax, if any, (which remains unchanged) for those years was reported and paid on a joint return basis. However, the Commissioner computed the hypothetical tax for the years 1943 and 1944 *on a joint return basis* which resulted in the tax deficiency here considered.

There is really only one difference between the taxpayers' computation of the hypothetical tax on a separate return basis, and the Commissioner's computation of the hypothetical tax on a joint return basis. Under the taxpayers' theory, the community divides the sum of the actual income for the year plus the pro rata share of the "bunched income" equally between themselves, then they take their separate deductions and arrive at two separate tax figures which are added together, to get the hypothetical tax from which the actual tax for the year is subtracted. On the other hand, the Commissioner added the hypothetical income to the actual income received for each year, subtracted the combined deductions, and then computed the hypothetical tax on the basis of a joint return, from which the tax actually paid for the year, was subtracted.

Although the lower court did not pass on the sole issue presented to it, (see footnote 6) the court did make several comments about the Commissioner's contention that,

"Joint returns were filed by you and your spouse for the taxable years 1942, 1943 and 1944. Such filing constituted a binding election on your part as to the manner of computing your income taxes for those

---

6. By agreement in paragraph 7 of Stipulation set out supra.

years. Accordingly the computation for the taxable year 1945 under Section 107(a) Internal Revenue Code, of the taxes attributable to compensation for personal services for the taxable years 1942, 1943 and 1944, is made on the basis of joint returns."

The Tax Court commented at page 394 of 18 T.C. of its reported opinion:

"It is perfectly true that in applying section 107(a) prior tax years are not opened, and the tax for prior years is not revised. The computations made in applying section 107 (a) constitute only the measure of the tax for the year in which the long-term compensation is received, 1945 in this case. Section 107(a), in effect, has to do with adjusting tax rates for the taxable year so as to relieve a taxpayer from having to pay a tax on 'bunched' income for one year at higher surtax rates. Federico Stallforth, 6 T.C. 140, 158. *Since, in applying section 107(a), prior years are not being opened, the rule about the binding effect with respect to the year for which the taxpayer elects to report income in either a joint or a separate return appears to be immaterial, and one that does not come into play in applying section 107(a)."* (Italics ours.)

Although the lower court thought that the rule about the binding effect of filing a particular type of return was immaterial in a section 107(a) case, nevertheless the court said that there was "a strong indication that the petitioners' theory should not be approved because it involves administrative inconvenience and burden" which the court indicated was "the reason for the rule about the binding effect of an election to file a joint or a separate return."

Approximately two years after the decision in the Ford case, the Tax Court was confronted with the issue here posed but not decided. It met this problem in

Stockly v. Commissioner, 1954, 22 T.C. 28, a highly analogous case, which referred to the case now before us. In the Stockly case there were two petitioners, husband and wife, *who had reported their income tax on a joint return basis in the years 1941, 1942 and 1943.* In 1948, the husband received a large payment which was total compensation for legal services performed from 1936 until 1945. The taxpayers filed a joint return for 1948 and computed the "bunched income" by attributing one-half of it to each taxpayer ratably during the years in which it was earned, *computing the additional tax which would have resulted for those years on the basis of separate returns.*

In Stockly the Commissioner, in determining the deficiency for 1948, gave two reasons, one of which was:

"In the computation of tax under Section 107 for income received in 1948 and allocated and taxed to prior years under Section 107, * * * joint returns were filed for years prior to 1948, excepting the year 1944, and such election *may not be changed."* (Italics ours.)

On this appeal both parties have requested us to decide the "binding election" issue [7] which they presented to the Tax Court. We think that we should adhere to the theory expressed by Judge Murdock in the Stockly case,[8] where he disposed of the "binding election" issue by holding that taxpayers may, under Section 107, make computations on the basis of separate returns for earlier years, even though in some of those years, joint returns had been filed. It is unnecessary to burden this opinion with a repetition of Judge Murdock's comment on the issue since we here adopt his views.

We find no error in petitioners' computations of their 1945 income taxes. Therefore, the decision of the Tax Court which concluded that there is a deficiency

---

7. Apparently no Regulation deals directly and specifically with this problem.

8. Judge Murdock's opinion was reviewed by the entire Tax Court.

in income tax for the year 1945 in the amount of $1,159.29 must be reversed.

Reversed.

POPE, Circuit Judge.

I concur in all that is said in Judge Bone's opinion. I suggest there is an additional ground upon which it may be said that the reason assigned by the Tax Court for its decision cannot justify it. That reason was that "we do not know what the separate individual deductions of George Ford were for 1943 and 1944." This alleged want of showing on the taxpayers' part was not a reason advanced by the Commissioner in his deficiency notice. And paragraph 7 of the stipulation, quoted by Judge Bone, shows that this was not made an issue before the Tax Court. It cannot, therefore, sustain the decision below. Harbor Plywood Corp. v. Commissioner, 9 Cir., 143 F.2d 780, 783, citing Helvering v. Tex-Penn. Oil Co., 300 U.S. 481, 498, 57 S.Ct. 569, 81 L.Ed. 755.

The cases holding that where a taxpayer has an election between two methods of making returns, his choice, once made, is binding, such as Pacific National Co. v. Welch, 304 U.S. 191, 58 S.Ct. 857, 82 L.Ed. 1282; Binder v. Welch, 9 Cir., 107 F.2d 812; and Rose v. Grant, 5 Cir., 39 F.2d 340, 341, involve attempts to alter the amount of taxes owing for the very year in which the choice was made. The reason for holding the election binding is that otherwise the statutory period for filing returns would be enlarged to include the period allowed for recovering overpayments, with consequent administrative inconvenience. But here the computation in issue relates solely to 1945 taxes. As Judge Bone has pointed out, the amount of income received and taxes paid for 1943 and 1944 is not recomputed, but remains fixed. I see no reason why an election made in 1943 or 1944 relating to taxes for that year should have any effect on the computation of taxes for 1945, nor how the method proposed by the taxpayers in their return for that year would impose any burdensome un-certainties upon the administration of the revenue laws.

HEALY, Circuit Judge (dissenting).

I am inclined to think that in affirming the Commissioner's assessment of deficiencies the Tax Court reached the right result although for a reason not responsive to the issue framed by the parties.

Taxpayers are husband and wife. In 1945—the tax year in question—they made separate returns, whereas in the years prior to 1945 (while the bunched income reported in 1945 was in process of being earned) they had made joint returns. In computing their 1945 taxes under the relief provisions of Section 107(a) they adopted the more favorable method of making the necessary prior year computations as though separate returns had been filed for such years. The issue formulated before the Tax Court was whether or not, in reporting the Section 107 income in 1945, the taxpayers were bound to compute their taxes on the joint return basis adopted in the prior years.

It is of course true that in applying Section 107(a) prior tax years are not opened and the tax for such years is not revised. The computations to be made under the Section constitute only the measure of the tax for the year in which long-term earnings are received. But the taxpayers, in applying their method of computing their 1945 tax liability, in effect undertook to reopen the prior tax years. That this method imposed upon the Revenue Service an administrative burden of some consequence seems to me indisputable.

Under the method adopted by the Commissioner the tax attributable to long-term compensation is readily computed. The allocable portion is merely added to the net income as reported for a given year and the tax is computed on the combined amount in harmony with the rates in force for that year. The difference between that figure and the tax reported and paid represents the tax at-

894

tributable to the compensation allocable to the particular prior year. If, however, as the taxpayers here urge, the income and tax for the prior year may be determined on a different basis from that on which they were reported and computed, the result would be that additional computations, involving perhaps new factual and legal determinations, would have to be made. For example, the Commissioner points out that when a joint return is filed for a prior year, all income and deductions of both spouses are lumped together on the theory that the spouses are a taxable unit. If they are to be permitted to compute their Section 107 (a) tax on the basis of separate returns for that year, the income and deductions of each spouse must be determined. Even in community property states spouses may have separate deductions in addition to community income and deductions.

It is urged that the burden of proof in these respects is on the taxpayer, so that no real burden is cast on the Commissioner. But the Commissioner's onus of auditing and of investigating the facts would appear still to remain. While perhaps the burden will vary from case to case and in the instance before us may have been slight, nevertheless burdensome uncertainties are inherent if taxpayers may switch at will from one method to another more favorable to themselves in these Section 107 cases. An unbroken line of authority holds that where taxpayers have made an election between two methods of making returns, their choice is binding. Administrative burden and inconvenience, among other considerations, historically lie at the foundation of the policy. No hardship or surprise could result to the taxpayers here by applying the salutary principle. In prior years they were not unaware that there was income in proc-

ess of being earned which would have to be reported when received, and with that knowledge they made their choice. The same holds true in all these Section 107 cases, and I would apply the rule of Pacific National Co. v. Welch, 304 U.S. 191, 58 S.Ct. 857, 82 L.Ed. 1282, and holdings following it, to such cases.[1]

For these reasons I think the judgment below should be affirmed.

1. See particularly Rose v. Grant, 5 Cir., 39 F.2d 340, 341, where the court said: "The statute gives the right to the husband and wife to file either a separate or a joint return, but not to change from one to the other at any time it appears to their advantage to do so. The impossibility un-der such a system of determining the amount of the tax due as required by section 250(b) of the Revenue Act of 1921 (42 Stat. 264), as well as the administrative inconvenience thereof, condemns it."