302 F.2d 700
 62-1 USTC P 9418
 William MALAT and Ethel Malat, Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
Ben LESSER and Lily Lesser, Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
Louis RUDMAN and Shirley Rudman, Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
Louis LOMAS and Claire Lomas, Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
 Nos. 17289-17292.
 United States Court of Appeals Ninth Circuit.
 April 13, 1962, Rehearing Denied July 17, 1962.
 
 George T. Altman, Beverly Hills, Cal., for appellant.
 Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott and Morton K. Rothschild, Attorneys, Department of Justice, Washington, D.C., for appellee.
 Before JERTBERG and DUNIWAY, Circuit Judges, and DAVIS, District judge.
 DUNIWAY, Circuit Judge.
 
 
 1
 We have before us four separate petitions to review four separate decisions of the Tax Court of the United States. The four cases were consolidated for hearing and briefing before the Tax Court. The opinion of the Tax Court is reported at 34 T.C. 365.
 
 
 2
 Since the questions of law presented for decision on the several petitions are common to the four cases, we will dispose of the four cases in a single opinion.
 
 
 3
 Three of the petitions involve income taxes and additions to tax for the calendar years 1950 and 1951. The other petition involves income taxes and additions to tax for the fiscal years ended November 30, 1950, and November 30, 1951.
 
 
 4
 In all four cases the respective taxpayers reported as long-term capital gains on their individual income tax returns for the two taxable years stated, net gains from the sales of certain real estate properties acquired by them from the following corporations of which they were shareholders: Pioneer Plaza, Inc., Pioneer Plaza No. 2, Inc., and Teri-Plaza, Inc. The Commissioner issued deficiency notices to petitioners on their individual income taxes for those two years disallowing the treatment of this income as long-term capital gains.
 
 
 5
 The Commissioner determined deficiencies in income tax and additions to tax as follows:
 
 
 6
 Additions to tax under
 Section 294 (d)(2) IRC
 Petitioner Year Deficiency of 1939
----------------- -------------- ---------- ----------------------
William Malat 1950 $14,542.59 $1,003.26
 and Ethel Malat 1951 12,746.75 1,092.46
Ben Lesser and Taxable year 12,923.84 1,010.01
 Lily Lesser ended Nov. 30,
 1950
 Taxable year 11,253.70 none
 ended Nov. 30,
 1951
Louis Rudman and 1950 15,225.83 1,424.60
 Shirley Rudman 1951 12,950.63 1,142.63
Louis Lomas and 1950 18,083.77 1,362.28
 Claire Lomas 1951 9,958.91 1,186.22
 
 
 7
 The Commissioner in the several notices of deficiency, after setting forth the amounts of deficiency indicated above, attached several schedules showing the adjustments made to net incone and an explanation of the adjustments. As an illustration, the relevant portion of Schedules 1 and 2 attached to one of the deficiency notices is as follows:
 
 
 8
 'Commissioner of Internal Revenue'
 
 
 9
 'Taxable Year Ended December 31, 1950'
 
 
 10
 'Schedule 1'
 
 
 11
 'Adjustments to Net Income'
 
 
 12
 'Net income as disclosed by
 
 
 13
 the return $33,339.47
 
 
 14
 'Additional income:
 
 
 15
 '(a) Ordinary
 
 
 16
 income $51,866.69
 
 
 17
 'Schedule 2'
 
 
 18
 'Explanation of Adjustments'
 
 
 19
 '(a) Pioneer Plaza, Inc. 32,962.83 (1)
 
 
 20
 '(1) The net profit of $30,045.48 returned by you as a long-term capital gain from the sale of 31 lots, Pioneer Plaza, has been increased to a net profit of $32,962.83 from the sale of 31 homes. The homes are part of a single subdivision tract financed and constructed by Pioneer Plaza, Inc. The corrected net profit was received and retained by you under a claim of right and without restrictions as to its disposition.
 
 
 21
 'It is held the sales were those of Pioneer Plaza, Inc., and the net profits are taxable first to it and then, as corporate distribution to you as a stockholder of Pioneer Plaza, Inc., as ordinary income under section 22(a) of the 1939 Internal Revenue Code (26 U.S.C.A. 22(a)).
 
 
 22
 'In the alternative it is held that the homes were not capital assets but were held primarily for sale to customers in the ordinary course of your trade or business. The net proit from the sale is taxable as ordinary income under the provisions of section 22(a) of the Internal Revenue Code of 1939. The capital gain of $15,022.74 (50 percent of $30,045.48) has been eliminated from your income.'The other deficiency notices contain similar adjustments which followed the same pattern differing only in amount.
 
 
 23
 After all four cases were at issue in the Tax Court, issues not involved in this appeal were settled by stipulations and concessions which resulted in a reduction of deficiencies asserted for each of the two years below the amounts stated in the deficiency notices.
 
 
 24
 Prior to the time for hearing of the consolidated cases, the petitioners in each case filed a motion for judgment on the pleadings. As an illustration, the relevant portion of the motion in one of the cases is as follows:
 
 
 25
 'MOTION'
 
 
 26
 'Petitioners move the court for judgment on the pleadings, with the resulting deficiency to be determined under Rule 50 (26 U.S.C.A. (I.R.C.1954) 7453), and for that purpose show as follows:
 
 
 27
 '* * * *, the Commissioner in his deficiency notice, * * *, has held by way of an 'alternative' finding that the real estate parcels involved 'were not capital assets but were held primarily for sale to customers in the ordinary course of your (petitioners') trade or business.'
 
 
 28
 'Petitioners now ask the court to adopt the said holding of the Commissioner as its finding of fact under these issues.
 
 
 29
 'Petitioners submit for this purpose that they are under no obligation to support by evidence a position taken by the Commissioner in his deficiency notice. * * *.'
 
 
 30
 Similar motions were filed by petitioners in the other cases.
 
 
 31
 Consistent with the position taken in the motions, petitioners offered no evidence nor did the Commissioner. Hence, when the cases were submitted to the Tax Court for decisions, there remained only the issues raised by the motions for judgments on the pleadings.
 
 
 32
 The Tax Court denied the motions for judgments on the pleadings. In its opinion the Tax Court stated:
 
 
 33
 '* * * The motions do not state the dollar amount of the judgments they request be entered against them but obviously they are requesting judgment for the full amount of the tax deficiency since they ask it be entered on a finding of fact that will produce that sum.
 
 
 34
 '* * * These motions seek judgments of this Court against the moving parties in the exact amount of tax determined on the adjustments. That would be the judgments this Court would enter if no motions were filed and no evidence introduced.
 
 
 35
 'The only apparent purpose of the motions would be to have this Court decide in the case of the stockholder, and without any evidence, that his corporation had no income from the sale of residences. Obviously this would not be proper. The cases of the corporations may be pending before this Court. Their liability for tax cannot be adjudicated by such a pleading maneuver as petitioners make.
 
 
 36
 'Since petitioners, who have the burden of proof, submitted their cases on such motions without any evidence, the motions are utterly meaningless. Since they move for judgment against themselves in the exact amount determined, and introduce no evidence, and state they do not care to introduce evidence but will rest on their motions, they have no standing to ask this Court to base its judgments on conceded facts, or any pleading admissions. Respondent's determination of a deficiency is presumptively correct. When there is failure on the part of a taxpayer to introduce any evidence that it is not, the only judgment that will be entered against him for the determined deficiency will be based upon that presumption of correctness that attaches to respondent's determination and the taxpayer's failure to carry his burden of proof to show it was not.
 
 
 37
 'Petitioners' motions for judgments to be based upon this Court adopting any part of respondent's Explanation of Adjustments as its findings of fact, are denied. Respondent will have judgments against petitioners upon his determinations of tax due based upon his holding of the amounts to be added to income under the adjustments as to house sales which appear in all dockets. * * * It is to be understood that such judgments will be based upon the presumption of correctness of respondent's determinations and petitioners' failure to sustain their burden of proving they were not. Both parties state there are stipulations and concessions with respect to other adjustments and that a Rule 50 computation will be necessary in all the dockets.
 
 
 38
 'Decisions will be entered under Rule 50.'
 
 
 39
 Separate decisions were rendered in the four cases. An an illustration, the decision in one of the cases is as follows:
 
 
 40
 'Ordered and Decided: That there are deficiencies in income tax for the taxable years 1950 and 1951 in the respective amounts of $10,289.33 and $6,418.50, and there are additions to tax under Section 294(d), I.R.C. of 1939, for the taxable years 1950 and 1951 in the respective amounts of $748.07 and $899,28.'
 
 
 41
 The decisions in the other cases were in the same form differing only in the amounts of deficiencies and additions to tax.
 
 
 42
 We will first consider petitioners' contention that the Tax Court lacked jurisdiction to redetermine the determinations made by the Commissioner in these four cases. Petitioners argue that, by reason of the conflicting holdings by the Commissioner in the deficiency notices as to the factual basis for the deficiencies, either no determinations were made or the Commissioner acted arbitrarily and capriciously in making the same. We find no merit in this argument. If the Commissioner had chosen incorrectly to assert in his deficiency tax determinations only one factual basis reasonably grounded in the data procured, conceivably the bar of the Statute of Limitations on assessment would preclude assertion of another factual basis likewise reasonably grounded on the data in his possession. As stated in Revell, Inc. v. Riddell, 273 F.2d 649 (9th Cir.1959), cert. denied 364 U.S. 835, at p. 660, 81 S.Ct. 52, 5 L.Ed.2d 60:
 
 
 43
 '* * * We find no legal or logical reason which compels the Commissioner to run such risk in the proper performance of his duty to protect the revenue.'
 
 
 44
 Since the determinations made by the Commissioner in these cases were valid, petitioners properly invoked the jurisdiction of the Tax Court by filing their petitions for redetermination of the deficiencies. Int.Rev.Code of 1939, 272 (26 U.S.C., 1952 ed., 272); Int.Rev.Code of 1954, 7442 (26 U.S.C., 1958 ed., 7442.)
 
 
 45
 We now consider petitioners' contention that the Tax Court erred in its failure to make findings of fact in support of its redetermination of tax deficiencies.
 
 
 46
 The Tax Court made no separate findings of fact and no finding of fact appears in the opinion unless it be the following statement:
 
 
 47
 '* * * Respondent will have judgments against petitioners upon his determinations of tax due based upon his holding of the amounts to be added to income under the adjustments as to house sales which appear in all dockets.'
 
 
 48
 We do not regard such statement as a finding of fact that petitioners made any 'house sales.' It is clear that such statement was only for the purpose of identifying the particular adjustments to be made under Rule 50 of the Tax Court and was not intended to be a finding of fact that the 'house sales' were made by petitioners.
 
 
 49
 It is clear that if the 'motions for judgment on the pleadings' be accepted as being, in fact, the type of motions that they purport to be, they could not properly have been granted by the Tax Court. This is demonstrated by the pleadings before that court. In each case, the pleadings are in similar form. Taking the Malat case (No. 17,289) as an example, the petition to the Tax Court assigns in paragraph 4 a number of alleged errors. In respect to the year 1950 it states:
 
 
 50
 '(a) The Commissioner erred in treating the amount of $32,962.83, representing net profit from the sale of 31 homes, as net profit of Pioneer Plaza, Inc., taxable to petitioners as a distribution from said corporation.
 
 
 51
 '(b) The Commissioner erred in treating the said amount of $32,962.83 in the alternative as ordinary income from the sale of said homes by petitioners, instead of as capital gain.'
 
 
 52
 There are assignments identical in form regarding Pioneer Plaza #2, Inc. and Teri-Plaza, Inc. There are also similar assignments relating to the year 1951. In paragraph 5 of the petition, as to each of these assignments of error relating to the year 1950, there are the following allegations:
 
 
 53
 '(a) The said sales of property were sales by petitioner and not by Pioneer Plaza, Inc., Pioneer Plaza #2, Inc., or Teri-Plaza, Inc., respectively.
 
 
 54
 '(b) Petitioner was not in the business of selling real estate.
 
 
 55
 '(c) Petitioner did not hold said property primarily for sale to customers in the ordinary course of his trade or business.'
 
 
 56
 Similar allegations appear in paragraphs 9 of the petition as to each of the assignments of error relating to the year 1951. In his answer the Commissioner denies inter alia the allegations of paragraphs 4, 5 and 9.
 
 
 57
 Thus, in each case the pleadings on their face raise an issue of fact as to whether the sales were sales by the petitioner rather than by the corporation, and if the former, whether the petitioner was in the business of selling real estate and held the property primarily for sale to customers in the ordinary course of his trade or business. Under these circumstances, it is perfectly clear that motions for judgment on the pleadings were improper.
 
 
 58
 If, on the other hand, either the motions for judgment on the pleadings, or the refusal to produce evidence, or both, be treated as admissions, as the Tax Court treated them, their ultimate effect is to admit the correctness of the amount of the deficiency determined by the Commissioner, insofar as the same is based upon the sales of the homes or lots in question. The fact that each motion also purports to be an admission of the correctness of one of the Commissioner's two alternative theories is, to us, immaterial. The objective of a proceeding before the Tax Court is not to expound legal theories or to make advisory findings or to render advisory opinions, but to arrive at a determination of how much tax, if any, the petitioner owes. When the petitioners concede that the tax determined by the Commissioner is owed, as they did in this case, then the factfinding and law-expounding function of the Tax Court is at an end, and nothing remains to be done except to enter an order determining the amount of the deficiency. That is precisely what the Tax Court did here.
 
 
 59
 We are advised that there are pending before the Tax Court other cases in which the Commissioner has asserted deficiencies against the corporations involved and in which these same petitioners are also the petitioners because they are transferees of the corporations' assets. It thus appears that what the taxpayers here have tried to do is to execute a maneuver whereby they hoped, without presenting any evidence on the subject to obtain a binding adjudication that the sales were by them and not by the respective corporations, thereby killing off the other pending cases. The Tax Court refused to lend itself to this little game, and we think that what it did was proper.
 
 
 60
 Petitioners could have proceeded to present evidence to show whether or not the sales were by them or by their corporations. This they refused to do, and they are now in no position to complain of the consequences of that refusal.
 
 
 61
 It is suggested that the Tax Court should have made findings. We do not agree. The correctness of the Commissioner's ultimate determination, namely, that so many dollars of additional tax are due, having been conceded, we can see no reason why findings in support of that concession are required. We have held that a determination by the Commissioner in his 90-day letter, based upon alternative grounds, is proper and gives the Tax Court jurisdiction. (Revell, Inc. v. Riddell, supra, 9 Cir., 1959, 273 F.2d 649). Under these circumstances, we think that, as in other cases, the burden is on the taxpayers to show that the Commissioner is in error. The taxpayers having abdicated this burden and refused to offer any evidence, there was nothing before the Tax Court on the basis on which it could make findings. By the same token, the decision in these cases can hardly be claimed by either party to be res judicata in other pending cases as to the correctness of either of the Commissioner's alternative theories, as distinguished from the amount of tax due, since there has been no determination by the Tax Court either as to the facts or the law, in view of the taxpayers' refusal to proceed with their cases.
 
 
 62
 Such cases as Helvering v. Taylor, 1935, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623; Helvering v. Tex-Penn Company, 1937, 300 U.S. 481, 57 S.Ct. 569, 81 L.Ed. 755; Harbor Plywood Corporation v. Commissioner of Internal Revenue, 9 Cir., 1944, 143 F.2d 780; Timmons v. Commissioner of Internal Revenue, 4 Cir., 1952, 198 F.2d 142; Estate of MacCrowe v. Commissioner of Internal Revenue, 4 Cir., 1958, 252 F.2d 293, and Welch v. Commissioner of Internal Revenue, 4 Cir., 1961, 297 F.2d 309, can have no application here. In most of those cases evidence was received, and the Tax Court was properly required to take appropriate findings; in effect, they deal with a shifting of the burden of proof when the taxpayer presents evidence. In Harbor Plywood, the Commissioner was held bound by his own determination of the value of certain depreciable assets; there was no such admission by the taxpayer as is here involved. In Tex-Penn Co., the Board had made findings and the court disagreed only with its legal conclusions. In Welch, the Commissioner's determination was erroneous on its face. Under the circumstances of the cases now before us, the Tax Court was not required to demand that the Commissioner produce evidence, nor was it required to make findings.
 
 
 63
 Petitioners claim that they have been trapped into having a deficiency determined that may be greater than what they owe. Their theory is that if it is ultimately determined, in the pending companion cases dealing with corporation taxes, that the sales were by their corporations, then the amount of net income distributed to them by the corporations would have to be diminished by the amount of the corporation tax to be paid, and hence their personal, as distinguished from transferee, liability would be less. So far as the record before the Tax Court in these cases is concerned, the amount of tax is the same under either of the Commissioner's determinations, even though we may imagine that if the facts were produced by the taxpayers, it would appear that their own individual tax would be different, and perhaps less, if taxed as recipients of a distribution of funds in the nature of a dividend from the corporation, than it would be if they are taxed as the direct sellers of the homes. The taxpayers could have shown this, but elected not to do so. Petitioners were not trapped. The Commissioner, in opposing their motions, pointed out this possibility. In the face of this warning, petitioners persisted with their motions and refusal to produce evidence. One cannot help suspecting that petitioners hoped thereby to diminish their total liability, realizing that the sum of the transferee taxes and their own taxes as distributees of corporate income might be greater than the tax to which they were subjecting themselves by this maneuver. If petitioners have been trapped, no one has trapped them but themselves.
 
 
 64
 The Internal Revenue Code provides that a decision of the Tax Court dismissing a proceeding shall be considered as its decision that the deficiency is the amount determined by the Secretary or his delegate. It also provides that an order specifying such amount shall be entered in the records of the Tax Court, unless the Tax Court cannot determine such amount from the record in the proceeding. (See 26 U.S.C. Section 7459, subdivision (d)) The rules of the Tax Court, Rule 31(g), provide that failure to adduce evidence in support of the material facts alleged by the party having the burden of proof and denied by his adversary, may be ground for dismissal. Here the taxpayers, who had the burden of proof, failed to adduce evidence in support of their factual allegation that it was they and not their corporations that sold the homes. This would normally result in a dismissal. What the Tax Court did is equivalent to such a dismissal. It simply entered a judgment, as to this issue, determining that the deficiency was the amount assessed by the Commissioner. However, in this case it would not do to remand with directions to dismiss and enter the order contemplated by 7459(d), because there were other issues that the parties agreed upon, that were determined under Rule 50.
 
 
 65
 The motion of the petitioners to require the Tax Court to include in the record of these cases the records in other specified cases pending in the Tax Court is denied.
 
 
 66
 The decisions of the Tax Court are affirmed.
 
 
 67
 JERTBERG, Circuit Judge (dissenting).
 
 
 68
 I am in agreement with the majority opinion insofar as it holds that the determinations made by the Commissioner are valid and that the petitions for redeterminations filed by petitioners properly invoked the jurisdictions of the Tax Court. However, I am unable to agree with the majority holding that the Tax Court was under no duty to make findings of fact but could rest its redeterminations upon the presumption of correctness of the Commissioner's determinations.
 
 
 69
 I write at some length only because I feel that the decision in this case involves procedural matters which are important in the administration of the Revenue laws.
 
 
 70
 It is clear, as the majority opinion points out, that the 'motions for judgments on the pleadings' were improper. The Tax Court characterized such motions as 'meaningless.' Such motions, however, might reasonably have been construed as motions requiring the Commissioner to elect which of his conflicting determinations he wished to stand upon.
 
 
 71
 The Tax Court stated, 'It is to be understood that such judgments will be based upon the presumption of correctness of respondent's determinations and petitioner's failure to sustain their burden of proving they were not.' Petitioners concede the correctness of the alternative position taken by the Commissioner. Under such circumstances, they should not be required to prove the correctness of the position taken and asserted by him. See Harbor Plywood Corporation v. Commissioner of Internal Revenue, 143 F.2d 780 (9th Cir. 1944), at p. 783.
 
 
 72
 The two positions taken by the Commissioner are based upon conflicting factual situations which are mutually exclusive. They cannot both be correct. The situation presented is not the application of conflicting legal theories of liability sought to be applied to the same set of facts or determinations made against different taxpayers in respect to the same income.
 
 
 73
 In the Commissioner's first position, it is asserted that the lot sales were those of the respective corporations and that the net profits are taxable, first, to such corporations and then, as corporate distributions, to petitioners, as stockholders, as ordinary income. In the second position of the Commissioner, it is asserted that the homes were not capital assets but were held primarily for sale to customers in the ordinary course of petitioners' trade or business and that the net profits from the sales were taxable to petitioners as ordinary income.
 
 
 74
 While this Court has upheld the validity of conflicting determinations by the Commissioner against the same taxpayer in respect to the same income (see Revell, Inc. v. Riddell, cited in the majority opinion), such holding was reached because of the duty of the Commissioner to protect the revenue. The duty of the Tax Court is to base its redetermination on law applicable to the case before it. I believe redetermination consists of more than simply adopting the amounts of deficiencies fixed in the Commissioner's determinations in instances where the determinations are based upon conflicting factual determinations which are mutually exclusive. I believe under such circumstances that redetermination should inform the taxpayer as to which determination the presumption of correctness has been applied. Redetermination should inform the taxpayer of the basis of law and fact supporting the redetermination. See Helvering v. Tex-Penn Company, 300 U.S. 481, at p. 498, 57 S.Ct. 569, 81 L.Ed. 755. As stated in Timmons v. Commissioner of Internal Revenue, 198 F.2d 142 (4th Cir. 1952), at p. 143:
 
 
 75
 'The court should have found the facts upon which the reconstruction was based so that we could judge whether or not it was properly made. It is well settled that 'there must be findings, stated either in the court's opinion or separately, which are sufficient to indicate the factual basis for the ultimate conclusion."
 
 
 76
 To the same effect, see Estate of Albert E. MacCrowe, etc., et al. v. Commissioner of Internal Revenue, 252 F.2d 293 (4th Cir. 1958).
 
 
 77
 In the instant cases the petitioners to not know nor does this Court know, whether the redeterminations are based upon the premise that the net profits realized by the respective corporations from the lot sales are taxable to the petitioners as corporate distributions in the nature of dividends or on the premise that the lots were held by petitioners primarily for sale to customers in the ordinary course of the trade or business of the petitioners and that the net profits from the sales are taxable to petitioners as ordinary income. In my view, it is the duty of the Tax Court to embody in its redeterminations the basis in fact of its decisions. This is particularly true in the instant cases where the record reveals that there are cases pending in the Tax Court wherein the Commissioner determined tax deficiencies against petitioners as transferees of the respective corporations in respect to the same net profits from the lot sales as are involved in the instant cases.
 
 
 78
 The majority opinion evidence no concern for the plight of the petitioners who conceivably might pay tax on the same income twice without hope of relief. I do not share the view expressed in the majority opinion that the petitioners are simply the victims of their own cunning legal maneuvers and, therefore, have no right to complain.
 
 
 79
 I have been unable to find any other decision of the Tax Court wherein the presumption of correctness has been applied by the Tax Court to alternative determinations of the Commissioner against the same taxpayer in respect to the same income based upon conflicting factual situations which are mutually exclusive.
 
 
 80
 I would remand these cases to the Tax Court with directions to adopt one or the other of the conflicting determinations as the basis for the application of the presumption of correctness. Upon remand, I would suggest that the Tax Court apply its expertise to the question of burden of proof in the circumstances of these cases. In this connection, I call attention to the case of Lawrence M. Hirsig v. Commissioner, 4 T.C.M. 848. In that case, two cases were consolidated for trial. In one case the Commissioner made a deficiency tax determination against Hirsig. In the other case the Commissioner made a tax deficiency determination against Lawrence M. Hirsig, Inc., a Corporation. Both determinations related to the same income. In the course of its opinion the Court stated:
 
 
 81
 'The conflicting determinations of the Commissioner detract from, if they do not completely nullify any presumption of correctness otherwise attributable to them. Cf. Helvering v. Taylor, 293 U.S. 507 (55 S.Ct. 287, 79 L.Ed. 623, 14 AFTR 1194).'